791 P.2d 788

**Georgia MAPLES, Petitioner,**

v.

**STATE of New Mexico, a Self–Insured, Respondent.**

No. 18404.

Supreme Court of New Mexico.

April 26, 1990.

Rehearing Denied June 6, 1990.

Sam A. Westergren, Santa Fe, for petitioner.

R. Tracy Sprouls, Roswell, for respondent.

## OPINION

BACA, Justice.

This matter is before the supreme court on a grant of certiorari. We examine the question presented but leave undisturbed the result reached below.

This case involves an appeal to the judiciary from a Workers' Compensation Hearing Officer's ruling. The granting of certiorari was premised upon a possible inequitable barring of appeal. The final order in this case was filed December 7, 1988. Petitioner claims that she did not receive notice of the decision until January 11, 1989; thirty-five days after the filing and five days too late for her to appeal the decision. Supreme Court Rule 12–601, which controls the time limitation for appeals from special proceeding to the judiciary, allows appeals only within *thirty days from the filing of the order*, SCRA 1986, 12–601. Petitioner apparently contends that she was unaware of the final ruling until after the thirty days had elapsed. If this were the case, it would be inequitable indeed, and for this reason cer-

tiorari was granted. An examination of the record, however, reveals that no inequity existed. Her attorney was aware of the ruling of the judge by letter before a written order was actually filed. Several alternatives to protect petitioner's right to appeal existed. Petitioner next contends that it does not matter that she missed the deadline for filing her appeal under Rule 12–601, because she met the deadline for filing an appeal under statutory provisions governing the Workers' Compensation Division, NMSA 1978, Section 52–5–8(A) (Repl.Pamp.1987), which allows filing thirty days after the order is mailed. In this situation, a rule adopted by the supreme court supersedes an inconsistent statute. *American Auto. Assoc. v. State Corp. Comm'n*, 102 N.M. 527, 697 P.2d 946 (1985); *James v. Human Serv. Dep't, Income Support Div.*, 106 N.M. 318, 742 P.2d 530 (Ct.App.), *cert. quashed*, 106 N.M. 353, 742 P.2d 1058 (1987). Petitioner's counsel was aware of this, and a written admission can be found in the court file (December 8, 1988, letter to David Grove, exhibit "1"). No confusion existed as to what time limitation controlled this appeal.

FACTS.

Ms. Maples worked for the State of New Mexico and was injured on the job on April 21, 1986. The State of New Mexico paid her temporary disability benefits and medical benefits from the outset, but did not concede permanent and total disability. Ms. Maples retained an attorney, who moved for a hearing to determine four issues: 1) whether Ms. Maples was permanently and totally disabled; 2) whether she should be awarded medical benefits; 3) whether she should be awarded her disability payments in a lump sum rather than weekly; and 4) the amount to be awarded. A hearing was set for October 5, 1988, before Judge Gregory Griego. All issues that dealt directly with petitioner's claims were decided at that time. No lump sum payment was granted, but she was determined to be permanently and totally disabled. The state was to continue to pay her medical bills, and her disability payment was to remain at $136.33 a week.

This ruling was set out in a letter decision and sent to the parties on October 9, 1988. The parties had notice of the court's ruling at this early date.

Her attorney then filed a motion for a hearing on attorney's fees. A hearing was set for October 25, 1988, at which time the attorney's fees were denied.

Counsel again filed a motion for a hearing on attorney's fees. A second hearing was set for November 25, 1988. After hearing arguments a second time, both parties were informed that the judge's original denial of the award of attorney's fees would stand, be incorporated into the letter decision, and filed. The decision was filed within twelve days, on December 7, 1988.

WAS PETITIONER BARRED FROM APPEAL?

■ Counsel was not unaware of the ruling of the court, only of the exact date of the filing of the order. He had notice of the court's ruling on the merits in October, and notice of the denial of attorney's fees orally from the bench on October 25, which was reiterated on November 25. At this point he had several possible courses of action. He could have filed an appeal immediately, pending the filing of the decision, under SCRA 1986, 12–201(A) which provides:

A notice of appeal filed after the announcement of a decision, or return of the verdict, but before filing of the judgment or order shall be treated as filed after such filing and on the day thereof.

This alternative was reaffirmed in *Weiss v. Hanes Manufacturing Co.*, 90 N.M. 683, 568 P.2d 209 (Ct.App.), *cert. denied*, 91 N.M. 3, 569 P.2d 413 (1977). Maples' attorney also could have called the workers' compensation office weekly to determine if the decision had been filed; he could have called the office of his opposing counsel, who apparently received notice of the filing within a few days of the filing date after he received the late notice. If nothing else, Maples' attorney could have moved for an extension of time in which to file the appeal under SCRA 1986, 12–201(E)(2), whereupon

the court could have determined if the circumstances constituted "excusable neglect or circumstances beyond the control of the appellant."

Petitioner was aware that the hearing officer had ruled on the merits and that the award of attorney's fees in this case had been denied before the ruling was filed. On the application for certiorari it appears petitioner and her counsel had no notice as to the ruling of the court until the decision was received in the mail, when the time to appeal had passed. Steps could and should have been taken at that time to perfect an appeal as outlined above.

CONFLICT BETWEEN SUPREME COURT RULE 12–601 AND NMSA 1978, SECTION 52–5–8(A).

■ It is true that Rule 12–601 and Section 52–5–8(A) both deal with the amount of time allowed for appeal from workers' compensation decisions to the judiciary. Rule 12–601 allows appeal within thirty days from the filing; the statute allows appeal within thirty days from the mailing. This conflict could lead to confusion. However, in 1985 this court held in *American Automobile Association v. State Corporation Commission*, 102 N.M. 527, 697 P.2d 946 (1985) that: "the law is clear that on procedural matters such as time limitations for appeals, a rule adopted by the Supreme Court governs over an inconsistent statute." *See also James v. Human Serv. Dep't, Income Support Div.*, 106 N.M. 318, 742 P.2d 530 (Ct.App.), *cert. quashed*, 106 N.M. 353, 742 P.2d 1058 (1987) (holding that time limitations on the right to appeal are peculiarly within the power of the judiciary to set).

The language of the rule itself dictates that it controls over conflicting law. This is especially clear when one considers that this rule was changed in 1986. The language was significantly strengthened from: "Except as may be otherwise provided by law." NMSA 1978, Civ.App.R. 13 (Repl.Pamp.1984), to the current language: "*Notwithstanding any other provision of law.*" SCRA 1986, 12–601(A).

■ Petitioner argues that the statute should control despite this strong language, based on the precedent set in *In re Application of Angel Fire Corporation*, 96 N.M. 651, 634 P.2d 202 (1981). In that case we found that administrative procedures must be exhausted before the court gains jurisdiction. In this case, unlike *Angel Fire*, the administrative procedures have been exhausted. A final order was entered, and nothing was left to be done by the Workers' Compensation Division. In *Angel Fire*, the appeal was taken from a decision of the State Engineer's office. Jurisdiction was not relinquished to the court because the administrative process was still continuing, despite the fact that some partial decisions had been made and were final. The result in this case is final. The only place to appeal this order was to the judiciary. The courts must gain jurisdiction at some point. An appeal from a final order to the judiciary is necessarily the point at which the judicial branch gains jurisdiction. When it does, it is inherently within the power of the court to set its own time limitations for appeals. The legislature has no power to fix the time within which an appeal must be heard by the supreme court in appeals from the district courts. *Ammerman v. Hubbard Broadcasting, Inc.*, 89 N.M. 307, 551 P.2d 1354 (1976), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). It follows that the court should have the power to set the time for all appeals from final orders, including appeals from final orders of administrative agencies. Supreme Court Rule 12–601 is the controlling rule in appeals from Workers' Compensation actions.

IF NO NOTICE HAD BEEN GIVEN.

The erroneous premise upon which we granted certiorari in this case is of great concern to this court: if parties have no idea as to the outcome of a hearing and then are not mailed notice until after the appeal time has run, are they without remedy and barred from appeal? In any hearing before the judiciary, NMSA 1978, Section 39–1–2, requires notice to be given before a judgment may be entered. In *Montano v. Encinias*, 103 N.M. 515, 709

P.2d 1024 (1985), this court held that a judgment entered without notice was subject to being vacated. Counsel in that case was notified of the judgment after the time for filing an appeal had expired. The trial court denied an extension of time to appeal. This court reversed and vacated the judgment so that a new judgment could be entered upon notice. Although this case dealt with an appeal from the district court, the equitable principles informing both Section 39–1–2 and our opinion in *Montano* also may apply in an appropriate case to an appeal from an administrative hearing.

It is clear from the facts in this case that petitioner's attorney had notice of the result in this case before it was filed and had several alternatives to preserve his appeal before, during, and after the final written order was entered. The fact that conflicting time limitations for appeal exists within the Workers' Compensation Act and Rule 12–601 is troubling and could lead to confusion. The language of 12–601 was strengthened for a reason: to keep a tighter control over appeals to the judiciary. It shall be enforced accordingly. It is the responsibility of attorneys to be aware of the procedural rules that control their clients' appeals. Rule 12–601 controls over the statute in this situation, and the supreme court has exclusive constitutional power to regulate pleadings and procedure before the judiciary. *Otero v. Zouhar*, 102 N.M. 482, 697 P.2d 482 (1985).

We AFFIRM.

IT IS SO ORDERED.

SOSA, C.J., and WILSON, J., concur.

RANSOM and MONTGOMERY, JJ., dissent.

RANSOM, Justice (dissenting).

This Court today holds that an appeal from the final order of an administrative agency is necessarily the point at which the judicial branch gains jurisdiction. I agree. At that point, procedural law becomes vested in this Court by virtue of Article VI, Section 3 (superintending control), and Article III, Section 1 (separation of powers), of the New Mexico Constitution. In *South-*

*west Community Health Services v. Smith*, 107 N.M. 196, 198, 755 P.2d 40, 42 (1988), the 1976 rule of *Ammerman v. Hubbard Broadcasting, Inc.*, with which I remain in strong accord, was reiterated by us as follows:

> Pleading, practice and procedure are of the essence of judicial power. Functions of the judiciary which are essential to its constitutional powers cannot be exercised by another branch of the government in conflict with the judicial branch. While, historically, the judiciary has shared procedural rule-making with the legislature, any conflict between court rules and statutes that relate to procedure are today resolved by this Court in favor of the rules.

This Court, however, has no superintending control over administrative agencies. That is the essence of legislative and executive power. Any conflict between court rule and statute that relates to administrative procedure must be resolved in favor of the statute. It is clear to me that the judicial branch does not gain jurisdiction and control until the final order of an administrative agency is appealed as provided by statute.

Accordingly, I would hold that the worker's appeal was timely under the statute, that the court of appeals failed to exercise the jurisdiction given it by the legislature in the appeal of administrative orders, and that the case be remanded to the court of appeals to be decided on its merits.

MONTGOMERY, Justice (dissenting).

I agree with Justice Ransom that the judicial branch does not gain jurisdiction until an administrative agency's order is appealed pursuant to a statute conferring the jurisdiction on an appellate court and that the appeal in this case was timely because it was taken within the time prescribed by the statute. Unlike Justice Ransom, however, I am not in "strong accord" with the rule in *Ammerman v. Hubbard Broadcasting, Inc.* In my view, *Ammerman* was incorrectly decided in significant

part,[1] and its rule of exclusive jurisdiction in this Court to prescribe matters touching procedures in the courts should be applied sparingly and only when necessary to protect the power of the judiciary against an unwarranted intrusion by the legislative or executive branches. This is not such a case; in fact, this is a case in which we should defer to the legislative power to prescribe the appellate jurisdiction of the court of appeals and to regulate procedures in the administrative proceedings governed by the Workers' Compensation Act. I would therefore reverse.

## I.

Of course, and despite the statement in the majority opinion, the validity of the statute in this case is not really challenged as violating the doctrine of *Ammerman*, 89 N.M. at 312, 551 P.2d at 1359, and of *State ex rel. Anaya v. McBride*, 88 N.M. 244, 246, 539 P.2d 1006, 1008 (1975), that the legislature lacks the *power* to prescribe rules of procedure by statute. Rather, a corollary of that doctrine is asserted: "[A]ny conflict between court rules and statutes that relate to procedure are [sic] today resolved * * * in favor of the rules." *Southwest Community Health Services*, 107 N.M. at 198, 755 P.2d at 42. Nevertheless, in my view the *Ammerman/McBride* doctrine has in recent years been applied much more broadly than necessary. Its use should be tailored much more discriminatingly to effectuate its purpose—preservation of the separation of powers established by Article III, Section 1, of our Constitution—and restrained to that purpose in order to avoid unseemly conflicts with the

legislative branch and unnecessary frustrations of other valid constitutional and legislative objectives.

As noted in Chief Justice Scarborough's dissent in *Southwest Community Health Services*, 107 N.M. at 201–02, 755 P.2d at 45–46, *Ammerman* has been extensively criticized.

> The New Mexico Supreme Court has taken what most students of procedure would consider a high-handed attitude of denigrating legislative competence in this field. Its position that privileges are strictly procedural rather than substantive and thus not amenable to legislative action is in the extreme minority.

2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 501[07], at 501-95—501-96 (1989) (footnotes omitted). *See also* Browde & Occhialiano, *Separation of Powers and the Judicial Rule-making Power in New Mexico: The Need for Prudential Constraints*, 15 N.M.L.Rev. 407, 443–47 (1985); Note, 1977 B.Y.U.L.Rev. 493; Weinstein, *Reform of Federal Court Rule-making Procedures*, 76 Colum.L.Rev. 905, 925 (1976) ("Despite the untenability of the * * * position, courts still flex their muscles occasionally, making extravagant claims of exclusive power over rules * * *. [T]he New Mexico Supreme Court has also taken this extreme position recently.") The doctrine is pernicious, in that it arrogates to the judiciary a power which is unnecessary to the maintenance of the judiciary's position as a co-equal branch of government and it derogates from the historic view of shared and coordinate responsibility for judicial rulemaking. *See generally* Browde & Occhialiano, *supra, passim*.

---

1. There were two issues in *Ammerman*. The first was whether the so-called newsmen's-privilege statute in NMSA 1953, Repl.Vol. 4 (1970), Section 20–1–12.1(A) (Supp.1975), was invalid as an unconstitutional attempt by the legislature to prescribe a rule of evidence; this Court held that it was. 89 N.M. at 309–12, 551 P.2d at 1356–59. The second was whether the provisions of subdivision (C) of the statute, relating to an "appeal" of an order of disclosure and requiring that such an appeal be heard *de novo* and within 20 days from its docketing, were unconstitutional as an attempt to require the Court to determine factual matters anew (in effect, to enlarge the Court's original jurisdic-

tion) and to regulate the appellate process within the Court; again we held that they were. *Id.* at 312–13, 551 P.2d at 1359–60. The first holding, in my view, improperly subordinates, to an assertion of judicial exclusivity in prescribing rules of evidence, a legislative policy that journalists should not be required to reveal their sources "[u]nless disclosure be essential to prevent injustice * * *." The second holding correctly disposes of what was a good example of legislatively mandated procedures that would unduly burden the Court and interfere with its ability to carry out its constitutional duties in deciding cases and manage its workload.

The doctrine also has spawned considerable confusion and unnecessary litigation by encouraging disputes over whether a statute, presumptively valid and applicable to resolution of a controversy, is nullified by an inconsistent court rule purporting to regulate some aspect of "procedure."[2]

As indicated above in the quotations from Judge Weinstein's article and book, New Mexico is to a considerable extent out of step with other American jurisdictions in reserving to the courts exclusive power to regulate matters of procedure in the courts. *See* Browde & Occhialiano, *supra*, app. at 477–478 (listing only thirteen states, including New Mexico, in which procedural rulemaking is exclusively a judicial function, based on separation of powers or specific constitutional rulemaking provisions). At the national level, of course, participation by the Congress in the rulemaking function has long been in effect,[3] and there is no indication of a resulting diminution in the strength or vitality of the federal judiciary. At the state level, according to Judge Weinstein, and

> [w]hile it may sound like heresy to the staunch supporters of unfettered judicial rulemaking, legislative control of procedure works fairly well where there are broad-based, active, well-financed agencies to prepare the necessary studies and legislation.

> \*       \*       \*       \*       \*       \*

In sum, some sort of role-sharing between courts and legislatures is both necessary and beneficial. Where courts have insisted on exclusive control over rulemaking, the practical results have not been useful.

*Weinstein, supra,* at 926–27 (footnote omitted). Although, admittedly, agencies of the sort contemplated by Judge Weinstein are lacking in New Mexico, our legislature has recognized for over fifty years that rules of pleading, practice and procedure should ordinarily be prescribed by the Supreme Court. 1933 N.M. Laws, ch. 84, §§ 1 & 2 (now codified as NMSA 1978, §§ 38-1-1 and -2 (Repl.Pamp.1987). When the legislature now chooses to prescribe by statute a rule that, in some sense at least, can be described as "procedural" or "touching upon procedure," the question whether that rule conflicts with this Court's own authority to prescribe procedural rules should be decided by referring to the purpose of the particular statute and the extent of intrusion upon the courts' ability to discharge their functions, not by categorizing the rule as either "substantive" or "procedural."

## II.

The essence of judicial power is adjudication—deciding concrete cases or controversies, resolving people's disputes when those disputes make their way into the court system established by Article VI of our Constitution. Despite the provision in Article III, Section 1, that "no person \* \* \* charged with the exercise of powers properly belonging to one of those departments [legislative, executive and judicial], shall exercise any powers properly belonging to either of the others," it is now firmly established that many disputes can be resolved

---

2. *See, e.g., Southwest Community Health Services v. Smith,* 107 N.M. 196, 755 P.2d 40 (1988) (statute regarding confidentiality of medical peer review organization records); *American Auto. Ass'n v. State Corp. Comm'n,* 102 N.M. 527, 697 P.2d 946 (1985) (statute giving parties sixty days to appeal from district court decision in motor carrier permit case); *Otero v. Zouhar,* 102 N.M. 482, 697 P.2d 482 (1985) (statute requiring claims against health care providers to be submitted to Medical Review Commission before filing suit); *State ex rel. Gesswein v. Galvan,* 100 N.M. 769, 676 P.2d 1334 (1984) (statute providing method for disqualification of district judge); *In re Motion for Subpoena Duces Tecum,* 94 N.M. 1, 606 P.2d 539 (1980) (statute limiting records of Organized Crime Commission to subpoena); *James v. New Mexico Human Services Dep't,* 106 N.M. 318, 742 P.2d 530 (Ct. App.1987) (statute regulating appeals from Human Services Department); *State v. Herrera,* 92 N.M. 7, 582 P.2d 384 (Ct.App.1978) (statute regulating admission of evidence of victim's past sexual conduct in criminal trial); *State v. Doe,* 90 N.M. 536, 565 P.2d 1053 (Ct.App.1977) (statute providing that defense of double jeopardy may not be waived).

3. *See* 28 U.S.C.A. §§ 2071, 2072, 2073 & 2074 (West Supp.1989) for the 1988 revisions in the federal approach to rulemaking power and procedure. *See also* Browde & Occhialiano, *supra,* at 429 n. 140.

by administrative agencies created by the legislature. *See, e.g., Wylie Corp. v. Mowrer,* 104 N.M. 751, 726 P.2d 1381 (1986) (overruling *State ex rel. Hovey Concrete Products Co. v. Mechem,* 63 N.M. 250, 316 P.2d 1069 (1957), and upholding constitutionality of new workmen's compensation administration). Thus, the judicial power to resolve disputes is shared with the legislative branch, at least insofar as establishment of tribunals to perform that function is concerned.

The essence of legislative power is legislation—passing laws, enacting rules for the governance of society. Again, despite the separation-of-powers provision in Article III, Section 1, it has long been settled that the judiciary possesses inherent power to promulgate rules governing the conduct and progress of cases within the judicial system. *See, e.g., State v. Roy,* 40 N.M. 397, 418–423, 60 P.2d 646, 659–62 (1936); *Southwest Underwriters v. Montoya,* 80 N.M. 107, 108, 452 P.2d 176, 177 (1969). Thus, the legislative power to promulgate rules of general application is shared with the judicial branch, at least insofar as rules governing the conduct of litigation in the courts are concerned.

To say, as Justice Ransom does, quoting from his opinion in *Southwest Community Health Services,* that pleading, practice and procedure are of the essence of judicial power is to state a proposition which is partly true and partly not. Some rules of pleading, practice and procedure are hardly of the "essence" of judicial power; some are only housekeeping rules, and it would not matter greatly whether the legislature or this Court prescribed them. Fortunately for the sake of uniformity, simplicity, and fair and expeditious resolution of lawsuits, and out of deference to the courts' presumably greater understanding about what is workable and what is not in this arena, the legislature has recognized that the Supreme Court should promulgate most rules of pleading, practice and procedure. *See* Section 38–1–1. Some rules of procedure, however, transcend in importance mere housekeeping functions; such rules may relate to matters of the courts' jurisdiction, or may embody policies deemed important

by the legislature for accomplishing goals quite outside the conduct of litigation, or may relate to the functioning of courts in such essential ways that their legislative prescription might seriously intrude on and impair the courts' ability to carry out those functions. In resolving an issue as to whether a statute or a court rule should prevail, this Court should focus on the purpose and effect of the statute and whether it does or does not trench upon the ability of courts to discharge their constitutional duties.

When the statute implements a legislative policy external to the functioning of the courts—as did the statutes at issue in *Ammerman* and *Southwest Community Services*—this Court (or any other court called upon to adjudicate the issue) should uphold the validity of the statute against a challenge that it embodies "adjective" or "procedural" law and is therefore within this Court's exclusive power to adopt or not to adopt, unless it in some way deprives the court of "sufficient power to protect itself from indignities and to enable it effectively to administer its judicial functions." *See State ex rel. Bliss v. Greenwood,* 63 N.M. 156, 162, 315 P.2d 223, 227 (1957).

> *Bliss* contains two grounds for judicial modification. The first is that the court may strike legislation that may undercut its ability to perform its essential functions. The second is that the court may negate statutory procedures which interfere with the effective and efficient operation of the courts.

Browde & Occhialiano, *supra,* at 470 (citing *Bliss,* 63 N.M. at 161–62, 315 P.2d at 227). *See also id.* at 435: "[T]he court [in *Southwest Underwriters v. Montoya,* 80 N.M. at 109, 452 P.2d at 178] may have authorized limited legislative rulemaking so long as the legislation does not touch upon 'those rules of pleading, practice and procedure which are essential to the performance of the constitutional duties imposed upon the courts.'" As Professors Browde and Occhialiano suggest, attempting to resolve the question whether a statute or a conflicting court rule should prevail by resorting to the dichotomy between substance and pro-

cedure and characterizing the statute and rule as either "substantive" or "procedural" is doomed to failure. *See* Browde & Occhialiano, *supra*, at 444–46 & n. 227. *Ammerman* itself recognized (though perhaps only by way of lip service) that "the line between substance and procedure is often elusive and that authorities, in endeavoring to follow this dichotomy in the rule-making process, are not always in accord." 89 N.M. at 310, 551 P.2d at 1357; *see also Southwest Underwriters v. Montoya*, 80 N.M. at 109, 452 P.2d at 178. The majority opinion in the present case relies upon this distinction and characterizes the statute here as "procedural." In my view, this leads to the incorrect result of unthinking adherence to Rule 12–601(A) and an unwise subordination of the statutory prescription of the time for taking an appeal from the Workers' Compensation Division.

### III.

This case presents a conflict between a statute prescribing the time for an appeal to the courts in a workers' compensation proceeding and a court rule providing for a different time and purporting to supersede the statute. In defense of the statute, it may be said that, although it does not seek to effectuate a public policy outside the context of workers' compensation litigation, it does represent part of the comprehensive scheme established by the legislature for such proceedings. *See generally* NMSA 1978, Sections 52–1–1 to 52–1–70 (Workers' Compensation Act), 52–3–1 to 52–3–60 (Occupational Disease Disablement Law), 52–5–1 to 52–5–19 (provisions relating to Workers' Compensation Division) (Repl.Pamp.1987 & Cum.Supp.1989). In defense of the court rule, one can say that, while it does not appear to guard against any particularly menacing threats to the independence of the judiciary, it does provide a single, uniform set of time periods and procedures for appeals from administrative agencies and thus, using the word in the majority opinion, protects against "confusion." (It is easy to imagine, however, the state of mind of the lawyer who scrupulously observes the statutory requirements for asserting a workers' com-

pensation claim and then finds that the statute on judicial review has been preempted by a court rule; the lawyer, not to mention the client, is probably "confused.")

Thus there appears to be no great clash of competing interests between the purposes underlying these two prescriptions, statute and court rule, telling a lawyer how to obtain review of a workers' compensation decision; and so it is not immediately apparent how the conflict should be resolved. Surely it is relevant in answering this question that the legislature has seen fit to provide a right of appeal directly to the court of appeals and, to that extent, has conferred a "substantive" right upon a party aggrieved by a decision of a workers' compensation judge. *See State v. Arnold*, 51 N.M. 311, 314, 183 P.2d 845, 846 (1947): "The creating of a right of appeal is a matter of substantive law and outside the province of the court's rule making power." And it is generally held that the timely filing of an appeal, perhaps along with other steps necessary to perfect it, is "jurisdictional." *See, e.g., State v. Garlick*, 80 N.M. 352, 456 P.2d 185 (1969); *In re Application No. 0436–A*, 101 N.M. 579, 581, 686 P.2d 269, 271 (Ct.App.1984) ("where the legislature has established statutory steps for perfecting an appeal, the steps are jurisdictional"). Where such "jurisdictional" steps necessarily affect in such a fundamental way a party's ability to exercise a statutorily created right, it would seem that compliance with the statute which creates the right, rather than a court rule which purports to regulate the manner of its exercise, should be given effect.

It is to me an unsatisfactory answer to this argument to say, as some of our cases have said, that "reasonable regulations affecting the time and manner of taking and perfecting the [appeal] are procedural and within this court's rule making power." *State v. Arnold*, 51 N.M. at 314, 183 P.2d at 846–47; *see Olguin v. State*, 90 N.M. 303, 305, 563 P.2d 97, 99 (1977); *State v. Garlick*, 80 N.M. at 353, 456 P.2d at 186. To distinguish between a statute confer-

ring a right of appeal and one that describes how the appeal may be taken, holding that the latter may be ruled invalid because this Court has preemptive power to promulgate rules of procedure, is to me unnecessary and counterproductive hairsplitting. Especially in this case, it violates what we said in *Olguin:* "[T]his court has consistently followed a policy of construing rules liberally, 'to the end that causes on appeal may be determined on the merits where it can be done without impeding or confusing administration or perpetrating injustice.'" 90 N.M. at 305, 563 P.2d at 99: (quoting *Jaritas Live Stock Tours Co. v. Spriggs,* 42 N.M. 14, 16, 74 P.2d 722, 722–23 (1937)). *See also In re Application No. 0436–A,* 101 N.M. at 581, 686 P.2d at 271: "Where, as here, there are two possible interpretations relating to the right to an appeal, that interpretation which permits a review on the merits rather than rigidly restricting appellate review should be favored." [4]

This Court has already ruled that "the *Ammerman* doctrine does not apply in administrative cases until the jurisdiction of the courts is properly invoked under the applicable statute." Browde & Occhialiano, *supra,* at 447 n. 231 (citing *In re Angel Fire Corp.,* 96 N.M. 651, 634 P.2d 202 (1981)). In *Angel Fire,* we said:

> [T]he statute here establishes an administrative procedure for taking a case or controversy out of the administrative framework into the judicial system for review. Jurisdiction of the matters in dispute does not lie in the courts until the statutorily required administrative procedures are fully complied with. The courts have no authority to alter the

statutory scheme, cumbersome as it may be.

96 N.M. at 652, 634 P.2d at 203. As Professors Browde and Occhialiano also note, administrative cases like workers' compensation proceedings are by definition special statutory proceedings to which judicial rulemaking authority does not extend. Browde & Occhialiano, *supra,* at 447 n. 231, and 408–09 n. 4.

The majority's attempt to distinguish *Angel Fire* is unpersuasive. What difference does it make, in deciding whether a statute is preempted by a court rule, that in one case the administrative process is completed and in another it is on-going? In both cases the statute spells out how to obtain judicial review of an administrative decision; in both cases the statute should be deemed controlling.

Finally, I find it significant that our Constitution confers on the legislature the power to prescribe the appellate jurisdiction of both this Court and the court of appeals. *See* N.M. Const. art. VI, §§ 2, 29. In the present case the legislature has said that the court of appeals is "invested with jurisdiction" when a notice of appeal is filed with the court of appeals within thirty days of mailing of the final order of the workers' compensation judge. *Cf. In re Application No. 0436–A,* 101 N.M. at 582, 686 P.2d at 272 (in appeal from decision of State Engineer, where statute so requires, "It is the act of obtaining service of process upon a party which satisfies due process requirements and invests the court with jurisdiction * * *.").

I would hold that the court of appeals had jurisdiction in this case because a no-

---

**4.** *See also Martinez v. Wooten Constr. Co.,* 109 N.M. 16, 780 P.2d 1163 (Ct.App.1989) (notice of appeal filed with Workers' Compensation Division instead of court of appeals sufficient to give court jurisdiction over appeal). In *Wooten,* the court of appeals relied on *In re Application No. 0436–A* and its policy of permitting review on the merits to uphold the court's jurisdiction; it distinguished the earlier case of *Tzortzis v. County of Los Alamos,* 108 N.M. 418, 773 P.2d 363 (Ct.App.1989), which dealt with the same issue as the present case and disposed of it in

the same way as did the court of appeals below, as involving the timeliness of the notice of appeal, not whether the notice was filed with the proper court. I would overrule *Tzortzis.* I would also overrule *James v. New Mexico Human Services Dep't, supra* note 2, which held that an appeal from an order of the HSD denying benefits had to be dismissed because the notice of appeal, filed within thirty days after the appellant's receipt of the order as provided by statute, was not filed within thirty days of its entry as provided by Rule 12–601(A).

tice of appeal was filed with it within thirty days after the hearing officer's decision was mailed, in compliance with Section 52–5–8(A). It was therefore error for the court of appeals to dismiss the appeal for lack of jurisdiction. The majority holding otherwise, I respectfully dissent.