This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-40732**

**JOHNNY HIGGINS,**

>	Worker-Appellant,

v.

**ADVANCED TOWER SERVICES, INC. and ZURICH,**

>	Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Shanon S. Riley, Administrative Hearing Officer**

Dorato & Weems, LLC
Derek Weems
Albuquerque, NM

for Appellant

O'Brien & Padilla, P.C.
Daniel J. O'Brien
Penelope M. Quintero
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**IVES, Judge.**

**{1}** Worker Johnny Higgins appeals from two orders of the Workers' Compensation Judge (the WCJ): an order denying Worker's application for bad faith and/or unfair claims processing and an order denying Worker's motion for reconsideration. Worker raises four claims of error: (1) the WCJ may not have had subject matter jurisdiction to rule on claims involving the Insurance Code; (2) the WCJ erred by failing to find that

Employer, Advanced Tower Services, Inc. and its Insurer, Zurich, (collectively, Employer-Insurer) engaged in unfair claim processing and/or bad faith because Employer-Insurer was late in distributing payment and violated a provision of the Insurance Code; (3) the WCJ erred by allowing Employer-Insurer to untimely file their response and admit exhibits late in violation of the Rules of Civil Procedure; and (4) the WCJ miscalculated the interest rate and the number of days of post-judgment interest recoverable against Employer-Insurer. We agree with Worker that the WCJ miscalculated the number of days that post-judgment interest had accrued on the settlement amount, but we are unpersuaded that any other error occurred. We therefore reverse and remand for the WCJ to calculate the correct amount of post-judgment interest, but otherwise affirm.

**DISCUSSION**

**I.        Subject Matter Jurisdiction**

**{2}**        Worker argues that the WCJ may not have subject matter jurisdiction to rule on Employer-Insurer's alleged violation of the Insurance Code, NMSA 1978, Section 59A-13-11 (1989), because "[t]he Workers' Compensation Administration is an administrative body with limited jurisdiction, limited function, and limited expertise" that is confined to "issues originating within the plain language of the" Workers' Compensation Act (WCA), NMSA 1978, §§ 52-1-1 to -70 (1929, as amended through 2017), and "the Insurance Code is a specialized area of law beyond the confines of the [WCA]." However, as Employer-Insurer notes, Worker is ultimately arguing that by violating the Insurance Code, Employer-Insurer engaged in unfair claim processing and bad faith in violation of Section 52-1-28.1 of the WCA. The WCA is the exclusive remedy for those claims. *See* § 52-1-6(E) ("The Workers' Compensation Act provides exclusive remedies."). Although the alleged violations were of the Insurance Code, because Worker argues that Employer-Insurer's actions violated the WCA, the WCJ had jurisdiction over Worker's claims and did not err in ruling on those claims.

**II.       Unfair Claim Processing and Bad Faith**

**{3}**        As we understand Worker's briefs, Worker argues that Employer-Insurer engaged in unfair claim processing and/or bad faith by failing to distribute the settlement amount to Worker within the fifteen-day deadline in the WCJ's order and by allegedly issuing settlement payment checks from a financial institution outside of New Mexico in violation of the Insurance Code. *See* § 59A-13-11. Worker contends that the WCJ therefore erred and abused its discretion by failing to penalize Employer-Insurer for these alleged violations. Worker argues that Employer-Insurer's alleged violation of the Insurance Code and failure to pay within the fifteen-day deadline in the WCJ's order may have "rise[n] to the level of bad faith," but "at a minimum" resulted in unfair claim processing because of a failure by Employer-Insurer "'to adopt and implement reasonable standards for the prompt investigation and processing of claims.'" (quoting 11.4.1.7(W)(3) NMAC). In his brief in chief, Worker's argument consists of a summary of the law and conclusory assertions that the law requires reversal here; Worker fails to

explain how the law applies to the facts in this case. Although the applicable regulation imposes liability for "unreasonabl[e] delay[]," 11.4.1.7(W) NMAC, rather than any delay whatsoever, Worker has failed to explain how the delay that occurred in this case was unreasonable and has not explained how the delay, even if unreasonable, was caused by Employer-Insurer's use of an out-of-state bank in violation of the Insurance Code. Also unsupported by developed argument is Worker's assertion that Employer-Insurer failed to adopt standards in violation of 11.4.1.7(W)(3) NMAC. We will not develop Worker's arguments for him, and we therefore decline to address the substance of this claim of error. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53.

### III.     Timeliness of Response and Admission of Evidence

**{4}**     Worker argues that the WCJ erred by not sanctioning Employer's failure to comply with the Rules of Civil Procedure because (1) Employer-Insurer did not file a timely response to Worker's application; and (2) the WCJ improperly admitted exhibits from Employer-Insurer at the hearing on Worker's application. Neither argument has merit.

### A.     The WCJ Did Not Abuse Its Discretion by Allowing Employer-Insurer to File Its Response Late

**{5}**     Worker contends that Employer-Insurer's failure to file a timely response to Worker's application "should have resulted in a ruling that all of [Worker's] averments were admitted." We review questions of the application and interpretation of rules of civil procedure de novo. *Becenti v. Becenti*, 2004-NMCA-091, ¶ 6, 136 N.M. 124, 94 P.3d 867. However, "we generally apply an abuse of discretion standard where the application of an evidentiary rule involves an exercise of discretion or judgment." *Dewitt v. Rent-A-Ctr., Inc.*, 2009-NMSC-032, ¶ 13, 146 N.M. 453, 212 P.3d 341. Worker argues that Employer-Insurer violated two Rules of Civil Procedure: Rule 1-007.1(D) NMRA and Rule 1-008(D) NMRA. *See* 11.4.4.9(A)(2) NMAC (applying the Rules of Civil Procedure to workers' compensation proceedings "[u]nless otherwise stated or necessarily implied" in the regulations). We are not persuaded by either of Worker's arguments, which we address in turn.

**{6}**     Importantly, the plain language throughout Rule 1-007.1 indicates that it pertains to responses *to motions*, and Worker has not cited any authority or developed any argument to support the notion that—notwithstanding the plain language—the rule also applies to responses *to applications* in workers' compensation proceedings. Absent any such authority or argument, we believe that the circumstances here are governed by the workers' compensation regulations. The regulations require responses to applications to be filed within fifteen days of service, *see* 11.4.4.13(B)(5) NMAC, but leave the question of whether to sanction a noncompliant party to the discretion of the WCJ. *See* 11.4.4.16(A) NMAC ("The judge may sanction any party, attorney, or personal representative for conduct that interferes with the orderly administration of the court or a hearing."). In this case, the WCJ made the discretionary choice not to sanction

Employer-Insurer and instead to hold a hearing on the merits, and that choice is consistent with our Supreme Court's observation that pleading is not "a game of skill in which one misstep by counsel may be decisive to the outcome," but is instead designed "to facilitate a proper decision on the merits." *Hambaugh v. Peoples*, 1965-NMSC-044, ¶ 17, 75 N.M. 144, 401 P.2d 777 (internal quotation marks and citation omitted). Worker has not established that the WCJ abused its discretion by declining to sanction Employer-Insurer for its untimely response.

**{7}** Nor has Worker established that Employer-Insurer violated Rule 1-008(D), which states that "[a]verments in a pleading to which a responsive pleading is required, . . . are admitted when not denied in the responsive pleading." Assuming without deciding that an application is a pleading governed by Rule 1-008(D), the rule does not apply to what occurred here. Employer-Insurer did not file a responsive pleading that failed to deny averments made by Worker. Instead, although Employer-Insurer filed its response after the fifteen-day deadline, the response did address each of the allegations in Worker's application.

## B. The WCJ Did Not Abuse Its Discretion by Admitting Employer-Insurer's Affidavits

**{8}** Worker also argues that, at the hearing on Worker's application, the WCJ improperly admitted affidavits from Employer-Insurer that were "untimely" and "not attached to a responsive pleading." Worker again relies on Rule 1-007.1(D), which states, in pertinent part, that "affidavits . . . in support of the response [to the motion] shall be filed within fifteen (15) days after service of the motion." Worker argues that this mandatory language required exclusion of the affidavits presented at the hearing and that had the evidence been excluded, "there would be no reliable basis on which the WCJ could deny [Worker's a]pplication." But, again, Rule 1-007.1(D), by its terms, applies only to responses to motions; it includes no language indicating that it applies to anything else, including affidavits submitted for a workers' compensation hearing. Instead, a regulation governs the admissibility of evidence at such hearings: "[a] judge may admit evidence, including hearsay evidence, provided that the evidence is relevant, has sufficient indicia of reliability and authenticity, and will assist the judge in determining a fact or issue in dispute." 11.4.4.13(N)(2) NMAC. Worker has not argued, much less established, that the WCJ ran afoul of this regulation.

## IV. Post-Judgment Interest

**{9}** Worker argues that the WCJ erred in its award of post-judgment interest because (1) the interest rate should have been calculated at 15 percent instead of 8.75 percent because Worker alleges bad faith by Employer-Insurer; and (2) the WCJ should have calculated interest starting on the date of entry of the original order on Worker's lump-sum settlement, not on the date of the fifteen-day deadline provided in the order. We disagree that the WCJ erred by calculating interest at 8.75 percent, but agree that the number of days was miscalculated.

**{10}** Post-judgment interest is mandatory and calculated at 8.75 percent unless "the judgment is based on tortious conduct, bad faith or intentional or willful acts, in which case interest shall be computed at the rate of [15] percent." *See* NMSA 1978, § 56-8-4(A)(2) (2004). We review the WCJ's interpretation of Section 56-8-4 de novo. *See Massengill v. Fisher Sand & Gravel Co.*, 2013-NMCA-103, ¶ 6, 311 P.3d 1231. Because the WCJ did not find that there was bad faith—as discussed above—interest was properly calculated at the rate of 8.75 percent.

**{11}** However, the WCJ did not properly calculate the number of days for which post-judgment interest is owed. The WCJ concluded that Worker was entitled to eight days of post-judgment interest, but did not explain the basis for its conclusion. Worker argues that post-judgment interest should have been calculated starting on the day the settlement order was approved, which was September 24, 2021, (amounting to twenty-five days of interest), while Employer-Insurer contends that interest should have been calculated starting on October 12, 2021, after the fifteen-day deadline set in the settlement order (amounting to seven days of interest). We agree with Worker.

**{12}** Post-judgment interest is calculated "from entry" of a judgment. *See* § 56-8-4(A). The policy underlying post-judgment interest is to "compensate[] a plaintiff for being deprived of compensation from the time of the judgment until payment of the judgment debt by the defendant." *Pub. Serv. Co. of N.M. v. Diamond D Const. Co.*, 2001-NMCA-082, ¶ 51, 131 N.M. 100, 33 P.3d 651. We are tasked with determining whether the order approving lump-sum settlement or the fifteen-day deadline given in the order was the "entry" of the judgment and therefore triggered the accrual of post-judgment interest. We hold that the interest began accruing on the date the original order approving the settlement was entered because that order required Employer-Insurer to pay a lump sum to fulfill its obligations under the settlement. *See Khalsa v. Levinson*, 1998-NMCA-110, ¶ 13, 125 N.M. 680, 964 P.2d 844.

**{13}** The controlling rule is that when an order approving a lump-sum settlement includes "decretal language indicating that it is a judgment for the payment of money," the order amounts to a "'final order' which accrues post-judgment interest." *Massengill*, 2013-NMCA-103, ¶ 17. Here, the order approving Worker's lump-sum settlement included decretal language. The order stated that "[t]he parties shall comply with the terms of their agreement as set forth within [the o]rder," and the order required, among other things, that Employer-Insurer make the settlement proceed payments within fifteen calendar days from the entry of the order. *See Khalsa*, 1998-NMCA-110, ¶ 13 (explaining that decretal language "carries the decision into effect by ordering that something happen, or, when appropriate, by entering judgment for a sum certain in favor of one party against the other party"). Because a lump-sum settlement with decretal language is considered a "final order" for the purposes of post-judgment interest, *see Massengill*, 2013-NMCA-103, ¶ 17, we agree with Worker that interest should have begun accruing on the date of the order approving the settlement.

**CONCLUSION**

**{14}**    We reverse and remand for the WCJ to recalculate post-judgment interest beginning on September 24, 2021. We affirm in all other respects.

**{15}    IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**MEGAN P. DUFFY, Judge**